**Christopher NICEWICZ, Appellant,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration.**

**No. 01–3511.**

United States Court of Appeals, Third Circuit.

Submitted April 19, 2002.

Decided June 26, 2002.

---

Before NYGAARD, AMBRO, and KRAVITCH,* Circuit Judges.

OPINION

AMBRO, Circuit Judge.

I.

Christopher Nicewicz, who was born in Poland and immigrated to the United States in 1985, applied for supplemental security income ("SSI") benefits on September 17, 1996, alleging inability to work due to a back injury.

The Commissioner of Social Security (the "Commissioner") denied his applica-

tion and his request for reconsideration. In response to Nicewicz's request, an Administrative Law Judge ("ALJ") held a hearing on his denial and likewise found him to be ineligible for SSI benefits on September 17, 1998. The Appeals Council denied Nicewicz's request for review, making the ALJ's determination the final decision of the Commissioner. Nicewicz instituted a civil action under 42 U.S.C. 405(g) to obtain review of this decision in the District Court. Both parties moved for summary judgment, and the Court referred the case to Magistrate Judge Thomas M. Blewitt, who filed a Report and Recommendation denying Nicewicz's appeal on the grounds that substantial evidence existed to support the denial of benefits. The District Court adopted the Report and Recommendation. This appeal followed. We affirm.

Social Security regulations prescribe a five-step process in evaluating a claim for SSI benefits. 20 C.F.R. 416.920 (2002). First, Nicewicz must establish that he was not performing "substantial gainful activity." He must next prove that he suffers from a severe impairment. If so, the Commissioner must determine whether the impairment meets or equals those listed in Appendix 1. If so, the inquiry ends with a finding of disability. If not, Nicewicz must establish that he cannot perform his past relevant work. If he does so, the burden shifts to the Commissioner to prove that work Nicewicz can perform is available in significant numbers in the national economy.

On two separate occasions in 1997, Nicewicz briefly returned to work. The ALJ found his post-accident work attempts to be "unsuccessful." He further found that Nicewicz suffered from severe lumbosacral

* Honorable Phyllis A. Kravitch, Senior United States Circuit Court Judge for the Eleventh    Circuit, sitting by designation.

disc disease that did not meet or equal those impairments listed in the Appendix. Despite the impairment, he retained the ability to perform "the full range of light work activity" work. However, he could not do his past relevant work. To determine if jobs Nicewicz could perform existed in significant numbers in the national economy, the ALJ referred solely to medical-vocational guidelines, or "grids," promulgated by the Secretary of Social Security. To apply the grids, the ALJ made two findings: Nicewicz's allegations as to the severity and extent of his subjective complaints were "not entirely credible," and Nicewicz was a "younger individual" with a limited education.

## II.

We must uphold the ALJ's decision if it was supported by "substantial evidence." 42 U.S.C. 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). It is not "a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks and citation omitted).

Nicewicz raises three issues on appeal. First, he claims that the ALJ erred in giving only "limited weight" to the testimony of his treating physician, Dr. Douglas K. Sanderson. Courts give a treating physician's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's]

case record." 20 C.F.R. 404.1527(d)(2). Dr. Sanderson merely stated that Nicewicz would be confined "full time to a very structured and limited sedentary occupational activity," and that he was "still having disability." Dr. Alan E. VanSant found Nicewicz to be capable of light work activity. The opinion of Nicewicz's current treating physician, Dr. Jay J. Cho, who saw him several times closer to the date of the determination, was that he was capable of light-duty work. Therefore, substantial evidence supported the ALJ's decision not to give Dr. Sanderson's opinion, such as it was, controlling weight.

Nicewicz next asserts that the ALJ erred in "disregarding" his subjective complaints of pain, listing all of the medical reports that detail his many complaints of pain. He misreads the ALJ's decision. The ALJ did not disregard his complaints, but merely found that they were "not entirely credible regarding the extent and severity of his subjective complaints, and their effect on his ability to perform substantial gainful activity." There is no doubt that Nicewicz is experiencing real pain. But three doctors—Morganstein, Van Sant, and Cho—found him to be capable of working. There is no evidence of radiculopathy (radiation of pain to the lower extremities) or "true" herniation, only a bulging disc that did not affect his neural structures. Nicewitz walks with a normal gait. Therefore, there was substantial evidence from which the ALJ could conclude that Nicewicz's testimony was not completely reliable.

Finally, Nicewicz asserts that the ALJ erred by failing to hear testimony by a vocational expert, and instead relied on medical-vocational guidelines, or "grids," to assess whether jobs Nicewicz was capable of performing exist in significant numbers in the national economy. Whether he is correct turns on whether Nicewicz suf-

fered from nonexertional, as well as exertional, impairments. Exertional impairments affect only a claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. 404.1569(b). In contrast, nonexertional impairments affect a claimant's ability to handle other demands of the job. Examples include pain, nervousness, anxiety, depression, and inability to concentrate or remember. *Id.* at (c). We have held that where nonexertional impairments exist, a court cannot rely solely on the medical-vocational grids to determine disability. *Sykes v. Apfel,* 228 F.3d 259, 270 (3d Cir.2000).

The Magistrate Judge found that the ALJ relied on substantial evidence in determining that Nicewicz suffered only from exertional impairments. He relied on the reports of Drs. Steven E. Morganstein and Lance Owen Yarus, as well as Dr. Sanderson (the last observing that Nicewicz's general health, aside from back problems, was "good"). Nicewicz himself testified at the February 18, 1998, hearing before the ALJ that no condition aside from the back disorder was keeping him from the work force.

Nicewicz argues that his pain is both an exertional and nonexertional impairment. While he acknowledges that the Magistrate Judge was correct in viewing some of his symptoms—his pain while sitting, standing, or walking for more than fifteen to twenty minutes, and his ability to lift only thirteen pounds—as exertional, he argues that "pain affects him in ways that are undoubtedly non-exertional as well." He points to his testimony about the dizziness, drowsiness, and lack of concentration he experiences as side effects of the pain medication he must take. There is no record of Nicewicz describing these symptoms to any of his doctors, even though he did complain to Dr. Cho about side effects

from two other medications, Daypro and Zoloft. This omission, coupled with the ALJ's finding that his complaints of pain were not entirely credible, supports the ALJ's determination.

Finally, Nicewicz argues the ALJ incorrectly determined that he had a limited, rather than marginal, education level. He was born in Poland, and only received an eighth-grade education there. This constitutes substantial evidence that Nicewicz had a "limited education," defined as seventh through eleventh grade. 20 C.F.R. 404.1564(b)(3). The ALJ took this limitation into account when using the grid at the fifth step of the inquiry, because one of the four factors was education.

### III.

Because we find there to be substantial evidence supporting the ALJ's denial of SSI benefits to Nicewicz, we affirm the District Court's opinion.